IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(NORFOLK DIVISION)

| | | |
|---|---|---|
| JAMES H. EDWARDS, III and<br>RACHEL F. EDWARDS,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON, as<br>Successor Trustee to JPMorgan Chase Bank,<br>As Trustee for NovaStar Mortgage Funding<br>Trust, Series 2004-4, NovaStar Home<br>Equity Loan Asset-Backed Certificates,<br>Series 2004-4, et al.,<br><br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:14-cv-00304-MSD-LRL<br><br>Removed Case No. CL14002285-00<br>(Virginia Beach Circuit Court) |

## **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS WITH PREJUDICE OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND REQUEST FOR ATTORNEYS' FEES**

Defendants The Bank of New York Mellon, as Successor Trustee to JPMorgan Chase Bank, As Trustee for NovaStar Mortgage Funding Trust, Series 2004-4, NovaStar Home Equity Loan Asset-Backed Certificates, Series 2004-4 and Ocwen Loan Servicing, LLC ("Moving Defendants") show the Court the following in support of their Motion to Dismiss Plaintiffs' Complaint with Prejudice under Federal Rule of Civil Procedure 12(b)(6) or, in the Alternative for Summary Judgment, and request for attorneys' fees.

### **INTRODUCTION**

Plaintiffs' claims hinge on their assertions that they timely made all monthly payments required on their mortgage loan under a loan modification agreement and that Ocwen improperly rejected some or all of these payments, failed to properly implement the terms of the

modification, and/or failed to properly apply these payments to Plaintiffs' mortgage loan. Plaintiffs, however, cannot prove the foundation of their assertions, because the undisputed evidence shows that, as of April 15, 2014, Plaintiffs had failed to make six (6) monthly payments on the modified loan, beginning with the first missed payment in July of 2012.

Plaintiffs' Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Moving Defendants are entitled to summary judgment in their favor on all of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(d) and 56.

## FACTUAL BACKGROUND

On or around October 13, 2004, Plaintiffs executed a promissory note payable to the predecessor of BONY in the amount of $161,500.00 (the "Note"). (Moving Defs.' Stmt. of Undisputed Material Facts ("SUMF") ¶ 1 (citing Affidavit of Paul Myers ¶¶ 2-5, Exs. A & D).) To secure repayment of the Note, Plaintiffs executed a Deed of Trust on October 13, 2004 (the "Deed of Trust") encumbering real property located at 1917 Arlington Arch Drive, Virginia Beach, Virginia (the "Property"). *Id.* ¶ 2 (citing Myers Aff. ¶ 4, Exhibit B). The Note and Deed of Trust shall be referred to collectively as the "Loan."

In October of 2011, Plaintiffs filed suit against Defendants in the Circuit Court for the City of Virginia Beach, Virginia, bearing case number CL11006459-00 (the "Suit"), in which Plaintiffs asserted various claims regarding the Loan and foreclosure and sale of the Property on behalf of BONY under the terms of the Deed of Trust. *Id.* ¶ 3 (citing Myers Aff. ¶ 6, Ex. C ¶ B). On January 18, 2012, to settle the disputes raised in the Suit, Plaintiffs and BONY entered into a settlement and release agreement ("SAR") in which BONY agreed to modify the Loan in accordance with terms of a contemporaneous loan modification agreement. *Id.* ¶ 4 (citing Myers Aff. ¶ 6, Ex. C). In exchange, Plaintiffs agreed to release Ocwen, Nectar, and BONY from any

claims that were or could have been raised in the Suit and to voluntarily dismiss the Suit with prejudice. *Id.* In the SAR, the parties also agreed that, in a subsequent action to enforce or interpret the agreement, the prevailing party is entitled to recover its attorneys' fees and costs associated with such action from the other party. *Id.* ¶ 5 (citing Myers Aff. ¶ 6, Ex. C ¶ 2).

In connection with the SAR, BONY and Plaintiffs entered into a loan modification agreement, dated January 18, 2012 (the "LMA"). *Id.* ¶ 6 (citing Myers Aff. ¶ 7, Ex. D). In the LMA, Plaintiffs agreed to remit a down payment of $926.43 upon execution of the LMA and to begin regular monthly modified payments on February 1, 2012. *Id.* ¶ 7 (citing Myers Aff., Ex. D ¶ 3.d). The basic terms of the LMA are:

- Total unpaid principal balance of the Loan modified to $171,203.65;

- Fixed interest rate of 4.00%;

- Modified monthly payment amount of $926.43 ($735.11 (principal & interest) + $191.32 (escrowed taxes, escrowed insurance – this amount subject to fluctuate with taxes and insurance rates) due on the first day of each month through maturity with the first payment due February 1, 2012;

- Maturity date of November 1, 2034;

- Late charge of 5% of the monthly payment amount chargeable to the Loan and due if the monthly payment is not received by Ocwen by the end of the 15th day of the month;

- All terms of the Note and Deed of Trust not expressly altered by the LMA remain in force and effect.

*Id.* ¶ 8.

In February 2012, Ocwen, servicing the Loan for BONY, implemented the terms of the LMA, which is reflected in the transaction history of the Loan: (a) outstanding principal balance adjusted to $171,203.65; (b) modified regular payments accepted as full complete payments and applied according to the terms of the LMA ($735.11 to principal and interest; $191.32 to escrow); and (c) interest rate for the Loan modified to 4%. *Id.* ¶ 10 (citing Myers Aff. ¶ 9, Ex. F). After the LMA was implemented in February 2012, through April 16, 2014, Plaintiffs failed to make a payment on the Loan in each of the following months: (1) July 2012, (2) September 2012, (3) January 2013, (4) May 2013, and (5) September 2013. *Id.* ¶ 12 (citing Myers Aff. ¶ 12, Ex. F).

Ocwen applied each of the payments that were received on the Loan from February 2012 to April 2014 according to the terms of the Note, Deed of Trust, and LMA.[1] *Id.* ¶ 13 (citing Myers Aff. ¶¶ 9-13, Exs. D, F).

As of April 15, 2014, the Loan was past due for six payments, inclusive of the payment due April 1, 2014. *Id.* ¶ 17 (citing Myers Aff. ¶ 15, Ex. F). In late April and May of 2014, Ocwen received payments on the Loan, but, because the Loan was in default, Ocwen rejected the payments and returned them to Plaintiffs because neither was sufficient (with the suspense

---

[1] The payments made between February and April of 2012, $735.11 was applied to principal and interest, and $191.32 was applied to escrow; for payments made beginning in May of 2012, $735.11 was applied to principal and interest, and $189.33 was applied to escrow, reflecting an escrow adjustment. *Id.* ¶ 14 (citing Myers Aff. ¶¶ 9-10, Ex. F). Ocwen applied any excess amount of a monthly payment to a "suspense" or "partial payment" account, in which funds are held until the amount is equal to a full monthly payment, at which time it is applied to the Loan as regular payment.[1] *Id.* ¶ 15 (citing Myers Aff. ¶ 13, Ex. F). Although Plaintiffs paid more than the regularly monthly payment amount in many of the payments that they made, the balance in the suspense account never reached $924.44 (the regular monthly payment amount after the escrow portion adjustment in May 2012). *Id.* ¶ 16 (citing Myers Aff. ¶¶ 13-14, Ex. F). If it had, $924.44 of the funds in the suspense account would have been applied as a regular monthly payment. *Id.* (Ocwen notes that this is not a complete and exhaustive description of the operation of a suspense account for a loan it services.)

4

balance) to cover all due and past due amounts. *Id.* ¶ 18. Under the terms of the Note, Deed of Trust, and LMA, once the Loan was in default, Ocwen and BONY were authorized to require full payment all amounts due and past due. *Id.* ¶ 19 (citing Myers Aff. ¶ 15, Exs. A, B, D).

As the servicer of the Loan, Ocwen furnishes the status of the Loan to credit reporting agencies. SUMF ¶ 20 (citing Myers Aff. ¶ 16). From November 2011, when Ocwen was served with the prior Suit by Plaintiffs, Ocwen reported Plaintiffs' Loan as "disputed." *Id.* ¶ 21 (citing Myers Aff. ¶ 17). In April and May of 2014, after the order voluntarily dismissing the Suit with prejudice was entered, Ocwen reported the Loan as delinquent, consistent with the payment history described above. *Id.* ¶ 22.

## LEGAL STANDARD

### I.  Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Dismissal is appropriate when the non-moving party fails to state facts supporting each of the elements of their asserted claims. *See Iodice v. U.S.*, 289 F.3d 270, 281 (4th Cir. 2002).

A complaint must be dismissed if it does not allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Id.* at 555, 127 S.Ct. at 1965. Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 508 n.1, 122 S.Ct. 992 (2002) & citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)).

To survive a motion dismiss under Rule 12(b)(6), the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). On a spectrum, the plausibility standard requires that the pleader show more than a "sheer possibility" of success, although it does not impose a "probability requirement." *Id.* Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. Summary Judgment

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). In such instances, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *see Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). To overcome a motion for summary judgment, the non-movant "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11, 106 S.Ct. 1348, 1355 n.11 (1986). The

"mere existence of some alleged factual dispute between the parties," however, cannot defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48, 106 S.Ct. at 2510. Instead, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita* at 586, 106 S.Ct. at 1356; *Austin v. Clark Equip. Co.*, 48 F.3d 833, 836 (4th Cir. 1995).

Importantly, ***if it is clear that a plaintiff is unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but <u>mandated</u>***. See *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. To that end, Plaintiff's failure to prove any single essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

Summary judgment is appropriate prior to discovery when the nonmovant is in possession of facts essential to its ability to oppose the motion. *See* Fed. R. Civ. Proc. 56(d). Here, the only facts that could defeat this Motion are available to Plaintiffs: evidence establishing that they timely made all payments due on the Loan under the LMA. Thus, the timing of this Motion is appropriate and in the interests of judicial economy.

## ARGUMENT AND CITATION TO AUTHORITY

**I.    <u>Defendants are Entitled to Judgment As a Matter of Law Because Plaintiffs Cannot Establish Essential Elements of Their Breach of Contract Claim.</u>**

To sustain a claim for breach of contract in Virginia, a plaintiff must prove: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009); *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). Here, Plaintiffs cannot prove that Moving Defendants breached either the SAR or the LMA; therefore, they cannot establish the

second and third elements required to sustain a claim for breach of contract. Indeed, the undisputed material facts show that the only breach here is Plaintiffs' breach of the Note, Deed of Trust, and LMA.

Moving Defendants fully complied with the SAR and LMA by rescinding the foreclosure sale, implementing the terms of the modification specified in the LMA, and applying payments received from Plaintiffs in accordance with applicable law and the terms of the Note, Deed of Trust, and LMA. (*See* SMUF ¶¶ 9, 10, 13-16.) Plaintiffs' allegations that they "timely" made payments under the LMA "each month" (*see* Compl. ¶¶ 4, 9) is, at best, mistaken and is belied by Ocwen's business records. (*See* SMUF ¶¶ 11-12.) The transaction history of the Loan is clear that Ocwen applied all of the payments that Plaintiffs did make in accordance with the term of the LMA. (SMUF ¶¶ 10, 11, 13-16.)

Plaintiffs' claim that Moving Defendants breached the SAR and LMA by "returning the Plaintiffs' payments each month" (Compl. ¶ 13) is similarly misguided and easily refuted by the payment history for the Loan. (SUMF ¶¶ 11-13, 18.) Rather, as of April 15, 2014, Plaintiffs had failed to make six required payments on the Loan from the inception of the LMA. (SUMF ¶ 17.) Nothing in the SAR or LMA requires Moving Defendants to accept and apply payments to the Loan without regard to Plaintiffs' delinquency on the Loan or the terms of the Note and Deed of Trust. (*See* Myers Aff., Exs. C & D.) Nor does the SAR or the LMA require Moving Defendants to ignore or excuse missed and past due payments on the Loan. (*See* Myers Aff., Exs. C & D.)

Plaintiffs simply cannot show that Moving Defendants breached any obligation under the SAR or the LMA; that is, Plaintiffs cannot prove the second and third elements of a breach of

contract claim. *See Sunrise Continuing Care*, 671 S.E.2d at 135. Accordingly, summary judgment against Plaintiffs on this claim is mandated. *See Celotex*, 477 U.S. at 322.

## II. Plaintiffs' Claim for Violation of the Fair Credit Reporting Act Fails Because The Act Provides No Private Right of Action for the Violation Alleged and Because No Inaccurate Information Was Reported.

Moving Defendants are unaware of a "State Fair Credit Report Act," as named in Plaintiffs' Complaint. If Plaintiffs are indeed purporting to bring a claim under this nonexistent statute, this claim fails on its face. Construing Plaintiffs' Complaint as claiming that Defendants violated the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), Plaintiffs cannot sustain this claim and Moving Defendants are entitled to judgment as a matter of law.

If the FCRA applies to Moving Defendants in this case, Moving Defendants would be considered "furnishers" under the FCRA,[2] i.e., an entity that supplies information to CRAs regarding an individual's account. *See* Fed. Trade Comm'n & Bd. of Governors of the Fed. Reserve Sys., *Fair Credit Reporting Act Dispute Process* 4 (2006), http://www.federalreserve.gov/boarddocs/rptcongress/fcradispute/fcradispute200608.pdf. The FRCA imposes duties on furnishers outlined in 15 U.S.C. § 1681s-2. Under § 1681s-2(a), furnishers must provide accurate information to CRAs, but this section does not provide for a private cause of action for violations. 15 U.S.C. § 1681s-2(d); *see also Klar v. Fed. Nat'l Mortg. Ass'n*, No. 3:13-cv-00462-JAG, 2014 WL 412533, at *4 (E.D. Va. Feb. 3, 2014). Under 1681s-2(b), which does provide a private cause of action, a furnisher may be liable "for failing to conduct a reasonable investigation into a consumer's claims after they have received notice from a credit-reporting agency that the consumer has disputed the accuracy of any information reported by the

---

[2] Moving Defendants do not waive their right to dispute at a later date whether BONY is a "furnisher" under the FCRA for purposes of the Loan.

9

furnisher." *Klar*, 2014 WL 412533, at *5 (citing *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)).

Plaintiffs claim that Defendants violated the FCRA by "report[ing] derogatory payment history to the national credit reporting agencies, ('CRAs')" "[d]espite the fact that [] Plaintiff[s] paid all contracted for amounts in full and on time." (Compl. ¶ 17.) As a threshold matter, Plaintiffs' allegation would fall under § 1681s-2(a), for which there is no private right of action. *See* 15 U.S.C. § 1681s-2(d); *Klar*, 2014 WL 412533, at *4. Regardless, as demonstrated above, the undisputed material facts show that Plaintiffs *did not*, in fact, make all of the payments due on the Loan after the LMA was implemented in February 2012. (*See* SUMF ¶ 12.) Thus, Ocwen accurately reported the Loan as "delinquent" in April and May of 2014. (*Id.* ¶¶ 12, 17, 22.) Further, Plaintiffs do not allege that they disputed the reported status of the Loan with a CRA.

The undisputed material facts show that Ocwen furnished accurate information regarding the status of the Loan to the CRAs. Even if it had not, Plaintiffs cannot sustain a claim under 15 U.S.C. § 1681s-2(b) because Moving Defendants were not notified by a CRA that Plaintiffs disputed the reported information and Plaintiffs do not assert such an allegation. Accordingly, Moving Defendants are entitled to summary judgment against Plaintiffs on this claim.

### III. Moving Defendants—Not Plaintiffs—Are Entitled to Recover Their Attorneys' Fees for this Action Under the Terms of the SAR.

Count III of Plaintiffs' Complaint is a demand for attorneys' fees under the fee-shifting provision of the SAR. Plaintiffs cannot sustain this claim. The fee-shifting provision of the SAR provides that the prevailing party in an action to enforce or interpret the SAR is entitled to recover its attorneys' fees from the other party. (*See* SUMF ¶ 5; Myers Aff., Ex C, ¶ 2.) The undisputed material facts support finding that Moving Defendants are entitled to summary

judgment in their favor and against Plaintiffs on all counts of Plaintiffs' Complaint. Thus, Moving Defendants are entitled to recover their attorneys' fees incurred in defending this action from Plaintiffs.

## CONCLUSION

As demonstrated above, the undisputed material facts show that Plaintiffs failed to make required payments under the terms of the Loan Modification Agreement and that Moving Defendants acted in accordance with the terms of the Settlement and Release Agreement, Loan Modification Agreement, Note, and Deed of Trust. Accordingly, Moving Defendants are entitled to summary judgment in their favor on each of Plaintiffs' claims and an award of their actual attorneys' fees and expenses incurred in connection with this action as provided by the Settlement and Release Agreement.

Respectfully submitted,

/s/ Christopher M. Corchiarino
Christopher M. Corchiarino
Virginia Bar No. 48193
*Attorneys for Defendants Ocwen Loan Servicing, LLC and The Bank of New York Mellon, as Successor Trustee to JPMorgan Chase Bank, As Trustee for NovaStar Mortgage Funding Trust, Series 2004-4, NovaStar Home Equity Loan Asset-Backed Certificates, Series 2004-4*
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
Telephone: 410-783-4038
Fax: 410-783-4040
cxc@gdldlaw.com

4838-0025-7308, v. 1